**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
--------------------------------------------------------
ELAINE WANG,                              :
                                          :
            Plaintiff,                    :   Civil Action No. 1:21-cv-7348
                                          :
v.                                        :
                                          :   COMPLAINT FOR VIOLATIONS OF
INTERSECT ENT, INC., KIERAN T.            :   SECTIONS 14(a) AND 20(a) OF THE
GALLAHUE, THOMAS A. WEST, TERESA          :   SECURITIES EXCHANGE ACT OF
L. KLINE, CYNTHIA L. LUCCHESE.            :   1934
DANA G. MEAD, JR., ELISABETH              :
SANDOVAL-LITTLE, and NEIL A.              :   JURY TRIAL DEMANDED
HATTANGADI, M.D.,                         :
                                          :
            Defendants.                   :
--------------------------------------------------------
```

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.      This is an action brought by Plaintiff against Intersect ENT, Inc. ("Intersect ENT

or the "Company") and the members Intersect ENT board of directors (the "Board" or the

"Individual Defendants" and collectively with the Company, the "Defendants") for their violations

of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in

connection with the proposed acquisition of Intersect ENT by Medtronic, Inc. ("Medtronic") and

its affiliates.

2.      Defendants have violated the above-referenced Sections of the Exchange Act by

causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on August 27, 2021 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Project Kraken Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Medtronic, will merge with and into Intersect ENT with Intersect ENT surviving the merger and becoming a wholly owned subsidiary of Medtronic (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Intersect ENT common share issued and outstanding will be converted into the right to receive $28.25 in cash (the "Merger Consideration").

3.      As discussed below, Defendants have asked Intersect ENT stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, Goldman Sachs & Co. LLC ("Goldman Sachs") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Intersect ENT stockholders or, in the event

the Proposed Transaction is consummated, to recover damages resulting from the Defendants'
violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange
Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges
violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant
conducts business in or maintains operations in this District, or is an individual who is either
present in this District for jurisdictional purposes or has sufficient minimum contacts with this
District as to render the exercise of jurisdiction over defendant by this Court permissible under
traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. §
78aa, as well as under 28 U.S.C. § 1391, because Intersect ENT is traded on the NASDAQ Stock
Exchange, headquartered in this District. In addition, Intersect ENT's proxy solicitor for the
purposes of facilitating the Proposed Transaction, MacKenzie Partners, Inc., is also headquartered
in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Intersect ENT common
stock and has held such stock since prior to the wrongs complained of herein.

10.      Individual Defendant Kieran T. Gallahue has served as a member of the Board since
April 2015 and is the Chairman of the Board.

11.      Individual Defendant Thomas A. West has served as a member of the Board since
July 2019 and is the Company's President and Chief Executive Officer.

12.    Individual Defendant Teresa L. Kline has served as a member of the Board since August 2017.

13.    Individual Defendant Cynthia L. Lucchese has served as a member of the Board since July 2014.

14.    Individual Defendant Dana G. Mead, Jr. has served as a member of the Board since June 2007.

15.    Individual Defendant Elisabeth Sandoval-Little has served as a member of the Board since April 2021.

16.    Individual Defendant Neil A. Hattangadi, M.D. has served as a member of the Board since March 2021.

17.    Defendant Intersect ENT is incorporated in Delaware and maintains its principal offices at 1555 Adams Drive, Menlo Park, CA 94025.  The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "XENT."

18.    The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19.    The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.    **The Proposed Transaction**

20.    Intersect ENT, Inc. operates as an ear, nose, and throat (ENT) medical technology company in the United States. The company offers PROPEL and PROPEL Mini, which are steroid releasing implants for patients undergoing sinus surgery to treat chronic sinusitis; and PROPEL Contour, a steroid releasing implant to frontal and maxillary sinus ostia, or openings, of the dependent sinuses. It also provides SINUVA, a steroid releasing implant for the treatment of

patients in the physician office setting; VENSURE Navigable and Stand-alone balloon, a sterile and single-use device, used to access and treat frontal, sphenoid sinus, and maxillary ostia in adults using a trans-nasal approach; and CUBE Navigation System, a virtual guidance platform for high precision ENT and ENT related skull-base surgeries. The Company was formerly known as Sinexus, Inc. and changed its name to Intersect ENT, Inc. in November 2009. Intersect ENT was incorporated in 2003 and is headquartered in Menlo Park, California.

   21. On August 6, 2021, Intersect ENT and Medtronic jointly announced that they had entered into a proposed transaction:

> DUBLIN and MENLO PARK, Calif., Aug. 6, 2021 /PRNewswire/ -- Medtronic plc (NYSE:MDT), the global leader in medical technology, today announced that it has entered into a definitive agreement with Intersect ENT (NASDAQ: XENT), a global ear, nose, and throat (ENT) medical technology leader dedicated to transforming patient care, in which Medtronic will acquire all outstanding shares of Intersect ENT for $28.25 per share in an all-cash transaction implying an enterprise value of approximately $1.1 billion. The boards of directors of both companies have unanimously approved the transaction.
>
> Medtronic's acquisition of Intersect ENT expands the company's portfolio of products used during ear, nose, and throat procedures. The complementary product lines and customer base will further Medtronic's efforts to have a positive impact for patients who suffer from chronic rhinosinusitis (CRS). Intersect ENT's PROPEL® and SINUVA® sinus implants are clinically proven solutions that open sinus passageways and deliver an anti-inflammatory steroid to aid in healing. By combining these products with Medtronic's navigation, powered instruments, and existing tissue health products, the company intends to offer a broader suite of solutions to assist surgeons treating CRS patients.
>
> "This acquisition directly aligns with our commitment to delivering continuous innovation that helps ENT patients," said Vince Racano, president of the ENT business, which is part of the Neuroscience Portfolio at Medtronic. "Intersect ENT's sinus implants are clinically proven to offer relief and healing to patients suffering from chronic rhinosinusitis. Combining this innovative technology with our established global presence and sales infrastructure will

allow us to broaden our capabilities while expanding access to these valuable therapies."

"This is an exciting day for patients suffering from CRS," said Thomas West, president and CEO of Intersect ENT. "After years of pioneering technology to help patients heal following sinus surgery, we welcome the integration of Intersect ENT's portfolio into Medtronic. We are looking forward to the global impact we can make as part of Medtronic, bringing these essential products to more patients than ever before. Thank you to our Intersect ENT employees – without you, we would not have reached this important step in our evolution."

In the U.S., CRS affects 1 in 8 adults (35 million) and often requires a complex combination of medical and surgical therapy. It is one of the top 10 most costly medical conditions for employers, with most patients reporting 5-15+ years of suffering and medical treatment.[1-3] Intersect ENT's PROPEL implant – used primarily in hospitals and ambulatory surgery centers – is a bioabsorbable, drug-eluting implant inserted after sinus surgery to keep passageways open and deliver an anti-inflammatory steroid to the sinuses. SINUVA implants are primarily used in the office environment for the treatment of recurrent sinus obstruction due to nasal polyps in adult patients who have had ethmoid sinus surgery.

### **Financial Highlights**

Following close, the transaction is expected to be accretive to Medtronic's weighted average market growth rate (WAMGR), and to be neutral to Medtronic's adjusted earnings per share in the first twelve months and accretive thereafter.

The acquisition is expected to close toward the end of Medtronic's current fiscal year, subject to the satisfaction of customary closing conditions, including receipt of regulatory clearances and approval by Intersect ENT's stockholders.

Medtronic's financial advisor for the transaction is Perella Weinberg Partners LP, with Ropes & Gray LLP acting as legal advisor. Intersect ENT's financial advisor is Goldman Sachs & Co. LLC, with Cooley LLP acting as legal advisor.

\* \* \*

22.   The Board has unanimously approved the Proposed Transaction. It is therefore imperative that Intersect ENT's stockholders are provided with the material information that has

been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.    The Materially Incomplete and Misleading Proxy Statement**

23.    On August 27, 2021, Intersect ENT filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.   The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Intersect ENT Financial Projections*

24.    The Proxy Statement fails to provide material information concerning financial projections by Intersect ENT management and relied upon by Goldman Sachs in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Intersect ENT management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate

management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

25.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Operating Income and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

26.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

27.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other

non-discretionary expenditures that are not deducted from the measure.[1]

28.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Goldman Sachs's Financial Analysis*

29.     With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis* for the Company, the Proxy Statement fails to disclose: (i) the range of illustrative enterprise values for the Company; (ii) the range of illustrative terminal values for the Company;  (iii) the inputs and assumptions underlying the use of perpetuity growth rates of 2.5% to 3.5%; (iv) the inputs and assumptions underlying the range of discount rates ranging from 9.50% to 10.50%; (v) the Company's weighted average cost of capital; (vi) the estimated tax savings associated with the Company's net operating losses during the period from July 1, 2021 to December 31, 2035; (vii) net debt of the Company as of June 30, 2021; and (viii) the total number of fully diluted shares outstanding as of August 2, 2021.

30.     With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the basis for pplying an illustrative range of multiples of 4.5 to 6.5x; (ii) the projected net debt of the Company as of December 31, 2021, 2022, and 2023; (iii) the number of fully diluted shares outstanding; (iv) the implied equity values per share of Company common stock as of December 31, 2021, 2022, and 2023; (v) the basis for

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

applying a discount rate of 10.0% to the implied equity values per share; and (vi) the Company's cost of equity.

31.     With respect to the Goldman Sachs' *Premia Paid Analysis*, the Proxy Statement fails to disclose: (i) the acquisition observed by Goldman Sachs; and (ii) the premia paid in those transactions.

32.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### On Behalf of Plaintiff Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100

33.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

34.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

35.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and

authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by Goldman Sachs and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

36.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

37.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

38.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate

remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

39.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40.     The Individual Defendants acted as controlling persons of Intersect ENT within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Intersect ENT, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Intersect ENT, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

41.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

42.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Intersect ENT, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue

contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

43.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

44.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

45.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

46.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.


Dated: September 1, 2021                          **MELWANI & CHAN LLP**

                                                 By:   /s *Gloria Kui Melwani*
                                                       Gloria Kui Melwani (GM5661)
                                                       1180 Avenue of Americas, 8th Fl.
                                                       New York, NY 10036
                                                       Telephone: (212) 382-4620
                                                       Email: gloria@melwanichan.com

                                                       *Attorneys for Plaintiff*